STATE OF CONNECTICUT *v.* STEPHEN TUNICK
(AC 28461)

Bishop, DiPentima and Mihalakos, Js.

Argued April 30—officially released August 5, 2008

*Robert A. Serafinowicz,* with whom, on the brief, was *John R. Williams,* for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,*

state's attorney, and *Pamela J. Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Stephen Tunick, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). On appeal, the defendant claims that the court improperly refused to disqualify itself from presiding over the criminal trial after having participated actively in plea negotiations prior to trial. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's claim on appeal. The defendant was arrested on June 15, 2006, at which time he hired attorney William Taylor to represent him. On September 12, 2006, the defendant entered a plea of not guilty. Several continuances were granted, and, finally, on November 17, 2006, the case was scheduled for trial to commence on November 20, 2006.[1] On November 18, 2006, attorney John R. Williams filed an appearance with the court via facsimile in lieu of Taylor's appearance. For no explained reason, the Superior Court clerk's office did not enter Williams' appearance in the court's file by the morning of November 20, 2006, so that when court was convened on that day, the court file still reflected that Taylor represented the defendant.

When the case was called, neither the defendant, nor Taylor or Williams were present. The court, *Ginocchio, J.*, promptly ordered that the defendant be rearrested. Later in the day, attorney Joseph M. Merly, a member

[1] The discussions that took place on November 17, 2006, were done in chambers, and no transcript is available for that day. The events of that day later were recorded by virtue of the court's explanation made during a discussion of the defendant's motion to disqualify, which took place on November 21, 2006.

of Williams' law firm, appeared in court with the defendant. The court vacated the rearrest order and reinstated the bond. The court further asked Merly to counsel with his client to determine if it was his client's intent to apply for accelerated rehabilitation or to go to trial.

On November 21, 2006, Williams filed the defendant's motion for recusal,[2] stating in court: "Your Honor has participated in plea negotiations in this case; you have demonstrated an appearance of bias; you have made representations on the record of facts, which, in fact, are not correct, and I have with me an attorney, a member of the bar . . . prepared to swear that in fact, representations you made yesterday putting this case in here for trial as of this morning are contrary to representations you made to him in January." The court denied the defendant's motion to disqualify. This appeal followed.

An appeal as to a judge's impartiality is governed by the abuse of discretion standard of review. *State* v. *Bunker*, 89 Conn. App. 605, 614, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). "The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Internal quotation marks omitted.) Id., 612–13. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness

[2] The defendant's motion to disqualify, filed on November 21, 2006, states: "The defendant respectfully moves to disqualify Hon. James P. Ginocchio from sitting on the trial of this action for the reason that Judge Ginocchio has participated in pretrial settlement matters in this case and has used his judicial office in an attempt to coerce the defendant to accept a bargain with the state and waive his Sixth Amendment right to a trial by jury."

of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) Id., 614.

We have repeatedly stated that an allegation of judicial bias implicates the basic concepts of a fair trial. Our thorough review of the record, however, leads us to conclude that there is no factual basis for the defendant's claim of bias.[3] Nowhere in the record does it appear that the court participated in any plea negotiations or that the court in any way expressed an opinion that the case was a strong one for the state.

We first address the defendant's claim that the court participated in pretrial negotiations. In paragraph four of his affidavit in support of his motion to disqualify, Williams asserted that the court "pressured and attempted to coerce the defendant . . . to accept the State's proposal that he waive his right to a trial and accept Accelerated Rehabilitation . . . ." The transcript reveals that the only references to accelerated rehabilitation made by the court are as follows:

"The Court: Both [the prosecutor] and Mr. Taylor [were] in chambers, and I believe there was no mistake that they were both told to be back on Monday to either file the [application for accelerated rehabilitation] or have Mr. Williams file an appearance, and if his client chose to pursue the [accelerated rehabilitation], we

---

[3] Raising a claim of bias on the part of a judge is a serious business and should be not undertaken without a sound basis in the record. See Rules of Professional Conduct 8.2 (a) ("[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge"). Although we conclude that there is no factual basis in the record for the defendant's claim, this court makes no finding as to whether counsel's statements to the court were knowingly false or made with a reckless disregard as to their truth, and, therefore, we make no finding as to whether counsel violated rule 8.2 (a) of the Rules of Professional Conduct. See *State* v. *Perez*, 276 Conn. 285, 300–301, 885 A.2d 178 (2005).

would give it the normal continuance; if not, we would pick a jury. . . .

"The Court: [The defendant] was supposed to—he and some counsel are supposed to be here at 10 o'clock either to pick a jury or to decide whether or not to apply for [accelerated rehabilitation].

\* \* \*

"The Court: . . . Now, the question today—because if we had determined today whether or not your client was going to apply for accelerated rehabilitation or select a jury, and I needed to know today so this would not be delayed any longer. So, do you want to confer with him now? . . .

"[Defense Counsel]: My client's indicating his intent to go to trial, Your Honor. We won't be applying for [accelerated rehabilitation]. . . .

"The Court: I'm not going to entertain any longer—he has been told by two attorneys, I'm sure, about the benefits of [accelerated rehabilitation] or lack of benefits. He has been apprised of that situation. . . .

\* \* \*

"The Court: Mr.—I wanted [the defendant] here Monday with either an [accelerated rehabilitation] application or someone from your firm to indicate what he was going to do.

\* \* \*

"The Court: Just so your client knows, once jury selection begins, I am not going to entertain—or Judge Carroll is not going to entertain an accelerated rehabilitation motion, so he knows that, okay?

"[Defense Counsel]: Once we start, I understand, that's it.

"The Court: Yes, well once it starts, we're not going to be in the middle of jury selection and he's going to decide, oh, I want to file an [accelerated rehabilitation] motion."

It would take a tortured reading of that colloquy to conclude that it amounted to a plea negotiation. There is absolutely no merit to the claim by the defendant.

Williams further claims in paragraph four of his affidavit that he was informed that "Judge Ginocchio had indicated that he considered the State's case to be strong . . . ." Again, the record does not reflect such a statement ever having been made by the court, and we conclude that there is no merit to this claim as well.

A claim against the judicial authority hits at the integrity of the judicial system. We are mindful that an attorney has a responsibility to his or her client to question the words or deeds of a judge when the record supports a possibility that the judge may have exhibited bias or has given the appearance of acting in a manner that could lead one to believe that the proceedings have been tainted. An attorney also has a responsibility to the court, however, to search the record thoroughly before such a claim is made. Similarly, the court, in fulfilling its duty to justice, must carefully analyze the motion and give careful consideration to the argument of counsel, and, if after careful consideration, there is a reasonable possibility of concluding that the record supports such claim of bias, the court should grant the motion for recusal.

We have reviewed the record carefully and conclude that there is absolutely no evidence that would lead us to reverse the trial court's conclusion. The defendant's remaining allegations of bias on the part of the court are equally meritless.

The judgment is affirmed.

In this opinion the other judges concurred.