WILLIAM MASSEY ET AL. *v.* TOWN OF
BRANFORD ET AL.
(AC 28593)

DiPentima, Lavine and Peters, Js.

Argued September 22—officially released December 22, 2009*

*Dawn Massey*, pro se, and *William Massey*, pro se, the appellants (plaintiffs).

*William H. Clendenen, Jr.*, with whom were *Irving H. Perlmutter* and *Maura Mastrony*, and, on the brief, *Kevin C. Shea*, for the appellees (named defendant et al.).

*Opinion*

PETERS, J. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter

---

* This case was originally decided on June 16, 2009, by a different panel of this court. See *Massey* v. *Branford*, 115 Conn. App. 153, 971 A.2d 838 (2009). Thereafter, on July 2, 2009, this court granted the plaintiffs' motion for reconsideration and vacated that decision. Accordingly, this opinion supersedes the prior decision in all respects.

of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993). The principal issue in this appeal is whether a settlement agreement is summarily enforceable if, although clear and unambiguous on its face, it was allegedly incomplete because it did not provide for the exchange of mutual releases. Because we agree with the trial court's enforcement of the settlement agreement and disagree with the plaintiffs' remaining claims, we affirm the judgment in favor of the defendants.

On May 13, 2004, the plaintiffs, William Massey and Dawn Massey, filed a three count complaint against the defendants, the town of Branford, and two town officials, Barbara Neal and Michael Milici, to challenge, on statutory and constitutional grounds, the tax assessment of their real property at 225 Stony Creek Road in Branford. The case was transferred to the complex litigation docket, first in New Haven and then in Waterbury.

On July 3, 2006, after extensive discovery and on the eve of trial, which was scheduled for July 10, 2006, the parties drew up a handwritten document entitled "settlement." On July 5, 2006, the plaintiffs notified the court of the agreement. Subsequently, on July 14, 2006, the defendants moved the court to enforce the agreement. After a hearing held on July 31, 2006, the court granted the defendants' motion.

On January 10, 2007, and again on January 22, 2007, the plaintiffs moved to disqualify the trial court, alleging judicial bias in the court's management decisions and in its rulings that were adverse to the plaintiffs. The court denied those motions. Thereafter, it rendered a judgment in favor of the defendants in accordance with the settlement.

The plaintiffs have appealed, challenging the court's granting of the defendants' motion to enforce the settlement agreement and its denial of their motion to reargue, motion to open and to set aside the judgment, motion for disqualification of the trial court and claim for a trial by jury. We affirm the judgment of the court.

I

The trial court's memorandum of decision granting the defendants' motion to enforce the settlement agreement states the following undisputed findings of fact. "The trial of this case was set for July 10, 2006. Pursuant to a trial management order the parties were set to meet to go over exhibits. Such a meeting was set for July 3, 2006. At that meeting, Dawn Massey, [defendants'] attorney Shelly Marcus and [defendants'] attorney Daniel C. DeMarchant . . . met and entered into a written agreement. As a part of the process in arriving at the agreement, Dawn Massey conferred with her husband, William Massey, and gained his approval for the settlement agreement terms, as long as it ended all of the litigation. The defendants' counsel had gained authority for the terms of the settlement agreement from conferences prior to the meeting with the town assessor, Barbara Neal, and during the meeting with the town's first selectman. The settlement agreement was initialed by page and signed after it was read aloud at the July 3, 2006 meeting.

"On July 5, 2006, the plaintiffs, in a written pleading entitled 'Updated Case Status Report' notified the court that the parties had come to a settlement agreement. The pleading detailed the specifics of the agreement as it was stated in the written document signed by the parties. The report went on to [state] that the parties were dealing with 'paperwork necessary to formalize their settlement agreement.' Ironically, the plaintiffs in their report sought the court to 'retain jurisdiction over

this matter until the defendants have fully complied with all terms set forth in the settlement agreement.'

"The parties proceeded to work on and [to] prepare releases to be signed by both sides, though the provision of releases was not a part of the written settlement agreement. The parties hit a roadblock when the plaintiffs sought a release from Trista Clyne, a nonparty witness, and she declined to provide one. The plaintiffs have an apprehension that, without that release, they are exposed to the possibility . . . Clyne could initiate a lawsuit against them for a perceived civil wrong emanating from oral or written statements made by the plaintiffs in the course of this litigation. The defendants take the position that this release is not necessary to the completion of the settlement agreement."

The court granted the defendants' motion to enforce the settlement agreement. It rejected the plaintiffs' claim that the agreement was incomplete because it failed to include a provision for releases and did not contain a merger clause. Acknowledging that the key consideration in determining whether to enforce a settlement agreement is the intention of the parties, the court found each provision of the agreement, and the agreement as a whole, to be clear and unambiguous. It relied on the fact that the written agreement specifically addressed the valuation of the property, the changes to be made to the plaintiffs' field card and the defendants' undertaking to pay the plaintiffs' costs and to repay tax overpayments plus interest at a specified rate.

Addressing the plaintiffs' claim with respect to releases, the court concluded that the agreement was not rendered ambiguous or incomplete by its failure to include language mandating releases between the parties. The court further noted that, even if the agreement had contemplated releases, it could not in any case have bound Clyne to its terms because Clyne

was not a party to the litigation. The court thus concluded that the fact that "the parties attempted later, after the execution of the agreement, to accommodate each [other] in the execution and exchange of releases does not mean they were an integral part of the agreement. They are settlement documents that are typically incidental between parties once a settlement is reached."

The plaintiffs' principal argument on appeal renews their claim that, without a provision for releases, the settlement agreement was unenforceable because it was incomplete. Secondarily, the plaintiffs argue that the agreement was unenforceable because it did not include a merger clause.[1]

"[A] trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 812. As such, the court's decision is subject to plenary review on appeal.

## A

"Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for

---

[1] The plaintiffs also claim, in their appellate brief, that the settlement agreement was obtained fraudulently. Because they fail to brief this issue and provide no analysis in its support, we decline to review it. *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004).

ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citations omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 181–82, 972 A.2d 228 (2009). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009).

On its face, the settlement agreement at issue here provides no support for the plaintiffs' contention that it was ambiguous because it was incomplete. The plaintiffs do not contend that any of the wording in the agreement is latently ambiguous. See *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 782, 653 A.2d 122 (1995) ("[l]atent ambiguity arises from extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous" [internal quotation marks omitted]). Furthermore, the plaintiffs do not assert that, antecedent to the parties' execution of the settlement agreement, the parties orally had agreed to the exchange of signed releases. Cf. *O'Keefe* v. *Bassett*, 132 Conn. 659, 662, 46 A.2d 847 (1946) ("an incomplete memorandum of the oral agreement previously made . . . would not preclude proof of that agreement").

The plaintiffs nonetheless maintain that the settlement agreement was not an enforceable contract because the parties did not have an "identical understanding" of the terms of the contract. They cite *Klein* v. *Chatfield*, 166 Conn. 76, 80, 347 A.2d 58 (1974), in which the issue was whether the trial court therein

properly had found a contractual obligation to have been conditional on the timely payment of a stipulated deposit. Affirming the judgment that there was no binding contract, our Supreme Court held: "A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the decisive question is the intent of the parties as expressed. . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish." (Citations omitted.) Id. The decision of the trial court in this case, however, contrary to that of the court in *Klein*, was that "the intent of the parties as expressed" was to enter into a binding settlement. *Klein*, therefore, does not advance the plaintiffs' case.

The plaintiffs also argue that, under *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs*, supra, 225 Conn. 804, and *Kostak* v. *Board of Education*, Superior Court, judicial district of Litchfield, Docket No. CV-86-0043374-S (June 26, 2006), the fact that the parties dispute the terms of the agreement renders the agreement ambiguous and unenforceable. In *Kostak*, after the parties had entered into a written settlement agreement containing specific terms, the plaintiff requested enforcement of an additional term outside of the agreement, which the defendants disputed. Without discussing the written terms of the agreement, the court declined to enforce this disputed *additional* term. That holding does not shed light on the propriety of the plaintiffs' claim in the present case that the written agreement to which they subscribed became nugatory because of a clause that it did not contain. Indeed, the plaintiffs' position is similar to that of the plaintiff in

*Kostak,* who could not prevail in his attempt to enforce a term extraneous to the written agreement.[2]

On the contrary, we agree with the court and the defendants that the plaintiffs' proposed reading of the settlement agreement is inconsistent with its terms. Clyne was never a party to the litigation, and the plaintiffs do not contend that the parties ever contemplated making Clyne a party to the settlement negotiations. As a nonparty, Clyne was not bound by the terms of the settlement. It follows, as the court held, that, even if the settlement agreement had contemplated releases, it could not in any case have bound Clyne, a nonparty, to its terms.

B

The plaintiffs' alternate contention that the settlement agreement was incomplete because it failed to contain a merger clause betrays a misunderstanding of the role that such a clause plays in the interpretation of contracts. A contract that contains such a clause manifests the parties' intent to prohibit a court from considering extrinsic evidence to determine whether a contract is a full integration of the parties' intention. *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.,* 252 Conn. 479, 503–504, 746 A.2d 1277 (2000). The plaintiffs have cited no authority, and we know of none, that holds that the absence of a merger clause is evidence that a contract is incomplete or ambiguous. Indeed, in the present case, the court permitted the plaintiffs to present extrinsic evidence in support of their interpretation of the settlement agreement. After giving plenary consideration to the plaintiffs' claims, the court had the authority to determine that the July 3, 2006 written agreement manifested

---

[2] For a case illustrating an unresolved dispute about the terms of the settlement agreement see *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.,* supra, 114 Conn. App. 290.

the intent of the parties to end the litigation and, therefore, to render judgment in accordance with the agreement.

## C

Finally, the plaintiffs argue that because the defendants drafted the agreement, any dispute over its terms should be construed against them. The plaintiffs are correct that, if a contract's terms are ambiguous, such contractual ambiguity is resolved against the drafter. See, e.g., *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13–14, 938 A.2d 576 (2008) ("Where the language is unambiguous, we must give the contract effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter." [Internal quotation marks omitted.]). The essential predicate for the applicability of this principle is the existence of an ambiguity in the contract. The plaintiffs have not, however, identified any ambiguity in the actual terms of the settlement agreement to which they agreed. As we already have discussed, we are not persuaded by their contention that the absence of provisions for releases is the functional equivalent of an ambiguity in the text itself.

In sum, for all the reasons detailed herein, we conclude that the court properly enforced the settlement agreement according to its terms. On its face, the agreement was unambiguous and complete. It was not made ambiguous by the absence of a provision for releases or by the absence of a merger clause.

## II

The plaintiffs second argument for reversal challenges the court's decisions not to disqualify itself, despite what they maintain was manifest perceived and actual bias throughout the course of the litigation. The standard of review for our consideration of a court's

decision not to disqualify itself is abuse of discretion. *State* v. *Tunick*, 109 Conn. App. 611, 613, 952 A.2d 103, cert. granted on other grounds, 289 Conn. 943, 959 A.2d 1011 (2008). We are unpersuaded by the plaintiffs' claims of abuse of discretion.

A

On January 10, 2007, the plaintiffs filed their first motion for disqualification of judicial authority, arguing that several procedural irregularities showed that the court manifested actual bias against them. In that motion, the plaintiffs primarily addressed intermediate case management decisions and record-keeping concerns that, in their view, were evidence of judicial bias. After oral arguments on the motion, the court denied the motion, stating: "The court does not believe, I do not believe that I have intentionally created any harm. I don't believe, unintentionally, I have created harm in the big picture. I know reasonable minds will disagree on the enforcement of the settlement agreement. That is what the appeal is for." Responding to the plaintiffs' procedural concerns, the court acknowledged difficulties with respect to record keeping and stated that a new case flow coordinator would be hired to assist the complex litigation docket in this respect. The court also observed that she played no direct role in the record keeping and filing of pleadings. The court further acknowledged that a trial management order may have "created . . . [a] time line problem" for the plaintiffs but explained the necessity for such orders on the eve of trial.

On January 22, 2007, the plaintiffs filed a second motion for disqualification of judicial authority, alleging additional procedural irregularities and accusing the court of showing bias in favor of the defendants in ruling in their favor on several occasions. On January 30, 2007, the court denied the second motion, stating:

"This court, the undersigned, harbors no prejudice or bias against the plaintiff and rejects those claims stated herein. The court has endeavored to conscientiously provide all parties in this case unbiased and fair hearing, and then to rule consistent with the law and facts found."

This second motion for disqualification focused on the substance of an adverse ruling made at the January 10, 2007 hearing. The plaintiffs argued that the court improperly had denied them the opportunity to present expert evidence on the record concerning the valuation of their real property.[3]

"[A]dverse rulings do not themselves constitute evidence of bias. . . . Obviously, if a ruling against a party could be used as an indicia of bias, at least half of the time, every court would be guilty of being biased against one of two parties. Moreover, the fact that a trial court rules adversely to a litigant, even if some of these rulings were determined on appeal to have been erroneous, [still] does not demonstrate personal bias." (Citation omitted; internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 26, 961 A.2d 1016 (2009).

In both motions, the plaintiffs relied on procedural and case management decisions and attempted to reargue the merits of an adverse ruling as support for their theory that the court is biased. The fact that the plaintiffs disagree with the substance of these decisions does not make the decisions evidence of bias. Indeed, the court showed the utmost tolerance and respect for the plaintiffs at the January 10, 2007 hearing and fully addressed the allegations of bias made by them concerning record keeping and case management. We conclude, therefore, that the court did not abuse its

---

[3] We cannot address the merits of this claim, because that issue is not before us in the present appeal.

discretion in denying the plaintiffs' motions for disqualification.

## B

In their appeal, the plaintiffs for the first time allege that the court should have disqualified itself in light of the court's disclosure, on September 29, 2005, that two members of the judge's family had, in the past, been involved with litigation against an entity represented by one of the law firms that represented the defendants in the present case.[4] Several additional procedural and case management issues that allegedly are probative of judicial improprieties also are raised for the first time on appeal.

"We [do] not ordinarily review on appeal a claim that a trial judge should have disqualified [herself] . . . when no such request was made during the trial. . . . Even where a proper ground for disqualification exists, it must be asserted seasonably or it will be deemed to have been waived." (Citation omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). Because, however, an accusation of judicial bias "implicates basic concepts of fair trial," we have sometimes "[invoked] our authority in the interests of justice to review 'plain error' not properly preserved in the trial court." Id. Yet, "[t]his court often has noted that it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error . . . we will not afford such review." (Internal quotation marks omitted.) *State* v. *Marsala*, 93 Conn. App. 582, 590, 889 A.2d 943, cert. denied, 278 Conn. 902, 986 A.2d 105 (2006).

---

[4] We note that, in response to the plaintiff's appellate motion for rectification, the trial court addressed the concerns about the involvement of her family with the defendants' counsel. The fact that the court addressed these issues following the plaintiffs' appeal does not cure the failure to raise these issues at trial.

The plaintiffs only inferentially have requested plain error review, by citing *Cameron* in their reply brief and mentioning *"Golding*[5] or plain error review" at oral argument. Even if these references may be construed as a request for plain error review, the plaintiffs' briefs and arguments do not provide an adequate basis for us to review their claim. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

## III

The plaintiffs next challenge the court's granting of the defendants' motion to strike their jury claim. The plaintiffs argue that their claim under General Statutes § 12-121f raises questions of fact properly determined by a jury. They further argue that actions to invalidate a grand list were available at common law and were historically tried by juries, citing *Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550 (1829).

General Statutes § 52-215 provides in relevant part that "civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity" may be tried as jury cases at the request of either party. In the present case, however, there are no facts to be tried by a jury. The plaintiffs' underlying tax claims were settled, the settlement

---

[5] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

agreement was enforced by the court and we now uphold that decision. Even if we agreed with the plaintiffs that they would have been entitled to a trial by jury on their § 12-121f claim, we can afford them no practical relief. See, e.g., *State* v. *McElveen*, 117 Conn. App. 486, 489–90, 979 A.2d 604 (2009) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow" [internal quotation marks omitted]).

IV

The plaintiffs finally challenge the court's denial of their motions to reargue and to open and to set aside the judgment. "At the outset, we note that in reviewing a court's ruling on a motion to open, reargue, vacate or reconsider, we ask only whether the court acted unreasonably or in clear abuse of its discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 451, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006).

On November 6, 2006, the plaintiffs filed a motion to reargue, which the court denied on November 28, 2006. At trial, the plaintiffs had argued in their motion that the court improperly had failed to consider several cases submitted with their posttrial brief, and, on appeal, they claim that the motion to reargue was denied improperly because the court had prejudged the motion to enforce the settlement agreement. Even if the plaintiffs are correct in their assertion that the court decided the motion to enforce the settlement agreement prior to its receipt of their posttrial brief, they cite no authority for the conclusion that denying the subsequently filed motion to reargue was an abuse of the court's discretion.

Because we concur in the court's enforcement of the settlement agreement, we find no impropriety in the court's denial of the motion to reargue. See id., 452–53.

On February 5, 2007, the plaintiffs filed a motion to open and to set aside the judgment, which the court summarily denied on February 7, 2007. The plaintiffs argued that the defendants and their counsel perpetrated a fraud on the court, and that the plaintiffs' due process rights had been violated. On appeal, the plaintiffs have failed to brief this issue adequately, and we, therefore, decline to address it. Similarly, the plaintiffs have failed to brief their claims that the court improperly abstained from ruling on their motion to reargue and for reconsideration and their preappeal motions. *Knapp* v. *Knapp*, supra, 270 Conn. 823 n.8.

In sum, in light of the unconditional settlement agreement between the parties, the plaintiffs are barred from further pursuit of their tax claims against the defendants in any forum. Furthermore, their disagreement with the court's management of this litigation does not establish their claim of judicial bias on the part of the court.

The judgment is affirmed.

In this opinion the other judges concurred.