******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATHERINE J. KIDDER *v.* RANDY READ ET AL.
(AC 35224)

Gruendel, Alvord and Keller, Js.

*Argued March 18—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Karazin, J. [summary judgment
motion]; Hon. Kevin Tierney, judge trial referee [motion
to enforce settlement agreement].)

*Robert F. Maslan, Jr.,* with whom was *Carolyn M.
Colangelo,* for the appellants (defendants).

*Thomas B. Noonan,* for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendants, Randy Read and Barbara Read, appeal from the judgment of the trial court denying their motion for summary judgment and granting the motion of the plaintiff, Katherine J. Kidder, to enforce a settlement agreement. On appeal, the defendants claim that the court erred in (1) denying their motion for summary judgment on statute of limitations grounds, and (2) granting the plaintiff's motion to enforce a settlement agreement. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendants' claims. The defendants previously owned residential real property in Darien. On April 4, 2001, they applied to the Darien Environmental Protection Commission (commission) to fill a man-made pond in their backyard to the surrounding grade and to plant a variety of vegetation in and around the filled area, and to install an inground swimming pool. Although the commission approved the plan, it stated that "[t]he work activity is to conform to the approved plans entitled, 'Site Plan,' and 'Wetlands Restoration.' " It further stated that in order "[t]o ensure that disturbance of the wetlands and stream is avoided, all sediment and erosion controls must be maintained in proper condition until the site is fully stabilized." The defendants did not install a swimming pool, but they did fill in the pond. Town officials subsequently inspected the property and issued a "Certificate of Occupancy and Zoning Compliance."

The plaintiff later purchased the property from the defendants, and the closing took place on May 19, 2003. The plaintiff alleged that prior to listing the property, the defendants, in violation of the town wetlands regulations, removed a number of trees, filled an existing pond, and created an expansive backyard area. The defendants then listed their property for sale, claiming that it had a private level yard with an approved pool site. The plaintiff further alleged that the defendants knew that their alterations were outside the scope of the commission's approval, but that they failed to inform her prior to her purchase of the property.

On July 7, 2003, the plaintiff received a letter from the commission that granted, with condition, the transfer of the wetlands permit to her name. The condition was that the plaintiff "confirm in writing prior to the issuance of a Zoning Permit that [she is] familiar with the plans and decision adopted by the [commission]. Specifically, the [commission] requests written confirmation that (1) [she is] aware that the inground pool cannot be constructed without the implementation of the wetland restoration . . . and (2) the wooded regulated areas shall be preserved. These wooded areas are documented within the February 2001 . . . report. Any

unauthorized clearing of vegetation and trees from within the wetlands and regulated [fifty] foot setback area shall be deemed a violation of the Wetlands Permit and the Town's Wetland and Watercourses Regulations." The defendants assert that their "restoration was completed prior to the August 31, 2001 issuance of the Certificate of Occupancy and Zoning Compliance [which] confirms that both the renovations and the wetlands restoration were completed in compliance with the two wetland approvals."

The plaintiff thereafter installed an inground pool around July 16, 2003, in reliance on the defendants' statements that the property had an approved pool site. On November 22, 2006, the plaintiff received a letter from the Darien Planning and Zoning Department (department) stating that she was in violation of the commission's approval given to the defendants. The letter stated that "the wetland area has been modified, and to a great extent eliminated. The lawn has been extended throughout much of the wetland, and now connects the house area to the pool area. Many of the mature trees in the wetlands and in the regulated area around the wetlands have been removed and replaced with lawn. This work is in violation of the Inland Wetlands and Watercourses Regulations and the past permits that have been granted for the development and use of the property." The department then informed her that she was responsible for correcting the aforementioned violations.

On November 3, 2007, the plaintiff brought this action against the defendants alleging misrepresentation, fraud, and fraudulent concealment, seeking money damages to compensate her for the sums that she expended to correct the wetlands violations. The defendants filed a motion for summary judgment, which was denied by the court. In its order, the court stated only that "there are substantial issues of material fact as to when the statute of limitations began to run." The parties thereafter engaged in settlement discussions, which resulted in the plaintiff filing a motion to enforce a settlement agreement purportedly reached with the defendants. The court granted the motion and ordered the defendants to pay the plaintiff $15,000. This appeal followed.

I

The defendants first claim that the court erred in denying their motion for summary judgment because the plaintiff's action is barred by the three year statute of limitations for torts set forth in General Statutes § 52-577. We agree in part and disagree in part.

We first set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009). The denial of a motion for summary judgment is not a final judgment and therefore is not ordinarily appealable. *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). When a case has not gone to trial, however, the denial of a motion for summary judgment is reviewable following the entering of a final judgment by the court so long as the review does not require the resolution of substantive issues that were not addressed by the trial court. *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); see also *Levine* v. *Advest, Inc.*, 244 Conn. 732, 756, 714 A.2d 649 (1998) ("a party may obtain review of a trial court's ruling denying summary judgment in the context of an appeal from a subsequent final judgment").

When the court denied the defendants' motion for summary judgment, it stated only that "there are substantial issues of material fact as to when the statute of limitations began to run." The court did not file a memorandum of decision, and the defendants did not provide a transcript of any oral decision or request an articulation from the court's order. However, because our review "is de novo, the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 396, 757 A.2d 1074 (2000). We therefore look to the record that was before the court on the defendants' motion for summary judgment.

The defendants claim that the court erred in denying their motion for summary judgment because there is no genuine issue as to when the statute of limitations began to run. They argue that it began to run on May 19, 2003, the closing date, or at the latest, July 16, 2003, the building permit date. They come to this conclusion by first arguing that the commission approved their application to fill in their man-made pond and, after such work was completed, they were issued a "Certificate of Occupancy and Zoning Compliance." The defendants thus claim that their actions could not have

constituted a violation of the town wetlands regulations.[1] The defendants further claim that they "were not aware of any regulatory issues or alleged wetlands or [commission] violations . . . that arose during [their] ownership of the property," and therefore did not conceal anything from the plaintiff. Moreover, they contend that the commission's July 16, 2003 letter to the plaintiff outlining the requirements that must be completed prior to a pool installation would have given her notice of any wetlands violations, and, therefore, it was at that time that the plaintiff had sufficient information to raise a claim concerning the property. Because the plaintiff did not bring an action within three years of either date, the defendants contend that her action is barred by the three year statute of limitations set forth in § 52-577.

The plaintiff, in contrast, argues that she was not aware that the defendants violated the wetlands regulations by wrongfully filling in the wetlands area until she received the violation letter dated November 22, 2006. She also claims that because the defendants fraudulently misrepresented that their property conformed to all local regulations pertaining to a potential pool in the backyard, the statute of limitations was tolled until that November, 2006 date. Accordingly, the plaintiff contends that the court was correct in concluding that a substantial issue of material fact existed as to when the statute of limitations began to run.

The plaintiff's misrepresentation and fraud counts are subject to § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is a statute of repose that sets a fixed limit after which the tortfeasor will not be held liable . . . ." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 139, 965 A.2d 582 (2009). "The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. . . . The relevant date of the act or omission complained of, as that phrase is used in § 52-577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage. . . . Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation." (Citations omitted; internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 445–46, 963 A.2d 83 (2009). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, supra, 139.

In adhering to the language set forth in § 52-577, we

look to the date of the wrongful conduct alleged in the complaint and the date the action was filed. The plaintiff closed on the property on May 19, 2003, which is the latest date the alleged wetlands violations could have occurred. The plaintiff filed her complaint on November 3, 2007. She was required, however, to file her complaint by May 19, 2006. Because she failed to do so, her fraud and misrepresentation claims are barred by the three year statute of limitations set forth in § 52-577. We therefore conclude that the court erred in denying the defendants' motion for summary judgment as to the misrepresentation and fraud counts.

The plaintiff also alleged, however, that the defendants concealed the wetlands violations. General Statutes § 52-595 governs fraudulent concealment actions. It provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." To prove fraudulent concealment, the plaintiff must show that the defendants: "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on [the plaintiff's] cause of action." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, 912 A.2d 1019 (2007).

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The party opposing summary judgment must present a factual predicate for [the party's] argument to raise a genuine issue of fact." (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 128 Conn. App. 507, 517, 17 A.3d 509, cert. granted in part on other grounds, 302 Conn. 902, 23 A.3d 1242 (2011). The court, however, must view the evidence in the light most favorable to the nonmoving party. See *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, supra, 294 Conn. 318.

In the present case, the plaintiff alleged the necessary facts to support the court's decision to deny the defendants' motion for summary judgment as to the count of fraudulent concealment. In her complaint, the plaintiff alleged that "[t]he defendants knew that all the alterations they made to the property were outside the scope of the approved [commission] plans and therefore in violation of the [commission] regulations. . . . The

defendants advertised the property as having a 'private level yard with approved pool site' to entice buyers into purchasing the property. . . . In July, 2003, the plaintiff had an inground pool installed in reliance upon the representations made by the defendant that the property was suitable for installation of a pool in the backyard." In her affidavit opposing the defendants' motion for summary judgment, the plaintiff stated: "I was unaware that the wooded wetlands area referenced in the correspondence from the town dated July 7, 2003, was in fact referring to what was now the existing backyard area, which in fact had been filled by the [defendants] in 2001." She further stated that "It was my belief that the yard had always been private and level, as represented in the [defendants'] marketing and advertising of the sale of the property, which stated the property had a 'private level yard with approved pool site.' . . . I was unaware that the defendants had previously altered the property by removing a vast amount of trees, bushes and shrubs and that they completely filled in an existing pond (wetlands), placed sod, and created an expansive backyard area. . . . It was my impression that I was installing a pool in a backyard area, not an area that was improperly filled wetlands. . . . I was induced into believing that the approved pool could have been placed anywhere on the 'private level yard with approved pool site' as long as the pool was not placed in the wooded wetlands area." The plaintiff then filed the aforementioned action against the defendants on November 3, 2007, less than one year after she received the November 22, 2006 violation letter.

On the basis of the foregoing, we conclude that there is a genuine issue of material fact as to when the applicable statute of limitations began to run as to the fraudulent concealment count. Accordingly, we conclude that the court did not err in denying the defendants' motion for summary judgment with respect to that count.

## II

The defendants next claim that the court, *Hon. Kevin Tierney*, judge trial referee, erred in granting the plaintiff's motion to enforce a settlement agreement purportedly reached between the parties. We agree.

The following additional facts are relevant to this claim. The parties appeared for a pretrial conference in chambers before the court, *Tobin, J.*, on August 31, 2011. Neither the plaintiff nor the defendants were in attendance. At a subsequent hearing before the court, *Mintz, J.*,[2] both parties interpreted the settlement discussions. According to the defendants' counsel, "Judge Tobin reached a number [for settlement of the dispute] that he picked. . . . We left with an understanding that I would talk to my clients about a schedule for payment of that number. When I did that the other side wanted a tighter payment schedule and then wanted a stipula-

tion on the record and then wanted a judgment on the record, neither of which my client[s] had ever discussed or agreed to. . . . [S]o we don't have a settlement." The plaintiff's counsel, in contrast, argued: "We came to an agreed number per Judge Tobin's recommendation. Everybody agreed and I spent the time talking my client to settlement. She agreed to that. The payment arrangement was proposed. Judge Tobin made some recommendations regarding the payment arrangement and then it was almost as if the communication did not flow. We needed to set up a payment arrangement. I requested . . . that it be more along the lines of Judge Tobin's recommendation because I felt that there were going to be some issues with receiving payment over a certain six month period of time. . . . But the number was always agreed to. . . . The payment arrangement is what's outstanding."[3]

Although the parties agree that settlement discussions ensued after the conference with Judge Tobin, they disagree as to whether a settlement was reached. We therefore set forth the relevant communications between the parties. On August 31, 2011, the plaintiff's counsel contacted the defendants' counsel through e-mail and stated: "I have spoken with my client and if your clients can make the full payment within the [thirty] days that would be acceptable. Otherwise perhaps they can make half now (within the week) and then the other half within the thirty days (October 1, 2011). We can then withdraw upon the second payment and provide full releases to both defendants." The defendants' counsel replied on September 7, 2011, stating: "When we were in court, the [defendants] offered to pay $15,000 over six months. Your client rejected that offer, and you conveyed that she wants payment in a much shorter time frame. I have discussed this with the [defendants]. They are not willing to make any settlement payment other than $15,000, to be paid within six months." The plaintiff's counsel thereafter responded: "Judge Tobin recommended a payment plan. That is what we would request your clients comply with. They have also set a withdrawal date based upon payments being made, and your representations to Judge Tobin. . . . If [the defendants] want payment over a six month period, then I am asking for a judgment to enter, with interest accruing until its paid in full." On October 19, 2011, the defendants' counsel e-mailed the plaintiff's counsel and stated: "As a result of the delay in your client's response and her counteroffer of an initial payment of $5,000 to $7,500, the [defendants] are no longer willing to pay $15,000 to settle. They will pay $5,000. This is their final offer." The plaintiff's counsel replied: "What is your offer because I must have missed it somewhere. I saw $15,000.00, which we agreed to, but you wanted payment over six months two months ago." The plaintiff thereafter filed a motion to enforce the purported settlement agreement, namely,

requiring the defendants to pay the plaintiff $15,000, which the court granted.

In his April 24, 2012 memorandum of decision, Judge Tierney found the following: "Based upon a review of all the letters and e-mails, the court finds that the parties settled the case on August 31, 2011, for the sum of $15,000. The exact date of payment was not agreed upon by the parties. During the post-August 31, 2011 e-mail and letter exchange the plaintiff was willing to accept a portion of the money now and a portion over a period of time. The defendants would pay the $15,000 in six months. The parties did not agree as to the exact date of payment. . . . In this case, the defendants were willing to pay the $15,000 six months from August 31, 2011. The 'Motion to Enforce Settlement Agreement' was argued on January 20, 2012. The plaintiff had not received any of the $15,000 as of January 20, 2012, although she had expectations of receiving it on August 31, 2011, or shortly thereafter. The defendants' September 7, 2011 proposal of a $15,000 payment in six months would run from approximately September 7, 2011, and the six months payment date would then be on or about March 7, 2012. If this court enters an order enforcing the settlement agreement, the plaintiff will have obtained the $15,000 in the fashion that she wanted, immediate payment now. The defendant[s] . . . also will have [rendered] the payment of the $15,000 in the fashion that they wanted, six months from September 7, 2011. Under those circumstances, the court finds that the disagreement concerning the date of payment was incidental."

The issue on appeal is whether the communications between the parties constituted an enforceable settlement agreement. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Because the defendant[s] [challenge] the trial court's legal conclusion that the agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the memorandum of decision. . . . In addition, to the extent that the defendant[s'] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Hogan* v. *Lagosz*, 124 Conn. App. 602, 613, 6 A.3d 112 (2010), cert. denied, 299 Conn. 923, 11 A.3d 151 (2011).

The defendants argue that the e-mail correspondences reveal the disagreement between the parties as to the payment amount and the payment plan. They therefore conclude that the court erred in enforcing the settlement agreement. The plaintiff, in contrast, contends that the court properly enforced the settlement agreement because the parties agreed to a payment amount. She argues, as the court found, that the payment plan was incidental to the agreement. We do not agree with the court, or the plaintiff, that the parties had an understanding that constituted an enforceable agreement. We therefore conclude that there was no basis for the court to grant the plaintiff's motion to enforce the settlement agreement.

"A settlement agreement is a contract among the parties." (Internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009). "A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the decisive question is the intent of the parties as expressed. . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish." (Internal quotation marks omitted.) *Massey* v. *Branford*, 118 Conn. App. 491, 498, 985 A.2d 335 (2009), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010).

In *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993), our Supreme Court held that "a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement." Although Judge Tierney found that "there was an unambiguous and clear settlement agreement to resolve the litigation for $15,000" and that "the date of payment was incidental," our review of the record leads us to the opposite conclusion. The plaintiff argues that the parties agreed in discussions with Judge Tobin that $15,000 was an appropriate amount to settle the litigation, and that the only thing left to be agreed upon was the payment plan. The parties' counsel[4] did not subsequently represent on the record that the parties agreed to a payment amount. We therefore cannot conclude that a settlement as to a payment amount, without a corresponding payment plan, was made at the pretrial conference.[5]

Moreover, our review of the parties' settlement discussions after the pretrial conference reveals that the parties were attempting to agree on two necessary parts of the settlement: (1) the payment amount and (2) the time within which the payment would be made. When

the defendants offered the plaintiff $15,000 to settle the case, they made clear that it was contingent on the payment being made over a six month period. The plaintiff rejected the defendants' offer because she wanted a shorter payment plan. The parties were thereafter unable to agree on both a payment amount and a payment plan. Because the parties openly disputed the combination of these two terms, a settlement agreement was not reached. "The law does not . . . regard an arrangement as completed which the parties regard as incomplete." (Internal quotation marks omitted.) *Massey* v. *Branford*, supra, 118 Conn. App. 498.

The defendants did not clearly and unambiguously agree to settle the litigation for $15,000 absent a six month payment plan. We therefore conclude that there was no basis for the court to grant the plaintiff's motion to enforce the settlement agreement.

The judgment is reversed as to the denial of the defendants' motion for summary judgment on the counts of misrepresentation and fraud and the case is remanded with direction to grant the motion on those counts; the judgment is affirmed as to the denial of the defendants' motion for summary judgment on the count of fraudulent concealment and the case is remanded for further proceedings on that count consistent with this opinion; the judgment is reversed with respect to the granting of the plaintiff's motion to enforce the settlement agreement and the case is remanded with direction to deny that motion.

In this opinion the other judges concurred.

[1] The defendants state that they did not alter the property after receiving the "Certificate of Occupancy and Zoning Compliance."

[2] The hearing before Judge Mintz was on the plaintiff's motion for a continuance of the due date of the withdrawal of the action. The plaintiff argued to the court that "[o]pposing counsel has not provided payment arrangements although the settlement amount is grieved by the party." Judge Mintz then allowed the parties briefly to explain what occurred during the pretrial conference and subsequent settlement discussions.

[3] Judge Mintz, presiding over the November 11, 2011 hearing, responded: "[Y]ou don't have a settlement. . . . You may have agreed upon a number, but if you can't agree on the payment terms, you don't have a settlement. I can't enforce a settlement where there's no meeting of the minds on the entire settlement."

[4] Only the parties' counsel, and not the parties, were present at the pretrial conference.

[5] This case is therefore distinguishable from *Audubon Parking Associates Ltd. Partnership*, in which the parties represented on the record, in open court, that they had agreed to settle the entire matter.