## JANET KNAPP *v.* DENNIS KNAPP
### (SC 16954)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 12—officially released September 7, 2004

*Michael S. Taylor*, with whom were *Karen L. Dowd* and, on the brief, *Kenneth J. Bartschi*, for the appellant-appellee (defendant).

*Mark Stern*, for the appellee-appellant (plaintiff).

NORCOTT, J. A separation agreement between the plaintiff, Janet Knapp, and the defendant, Dennis Knapp, provided, inter alia, that the defendant would pay the plaintiff weekly alimony in the amount of $775 "until the first to occur of the following events: the death of either of the parties; five (5) years from the date of the [judgment of dissolution]; or the [plaintiff's] remarriage; or cohabitation, as defined by statute." The defendant's principal claim on appeal is that the trial court improperly determined that it lacked the authority to enforce this provision retroactively in response to the defendant's allegation that the plaintiff had been cohabiting with another individual. Because we conclude that the trial court's factual finding that the plaintiff was not cohabiting, as defined by General Statutes § 46b-86 (b),[1] was not clearly erroneous, we affirm the judgment of the trial court.

The relevant factual background may be summarized as follows. The plaintiff and the defendant were married on September 13, 1975. Citing an irretrievable break-

---

[1] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

Although § 46b-86 (b) does not specifically define cohabitation, our appellate courts consistently have referred to that statute as the cohabitation statute, and both parties agree that article 2.1 of their separation agreement was referring to that statute. See, e.g., *Kaplan* v. *Kaplan*, 185 Conn. 42, 45, 440 A.2d 252 (1981) ("the principal issue before us is whether the trial court abused its discretion by not ordering a modification of alimony under the so-called 'cohabitation' statute, § 46b-86 [b]").

down in the relationship, and the subsequent establishment of independent living arrangements, the parties entered into a separation agreement on December 13, 1994. On that same day, the trial court dissolved the marriage between the parties, incorporating the provisions of the separation agreement into the judgment of dissolution. Under the terms of the separation agreement, the defendant was required to make weekly alimony payments in the amount of $775 from January 2, 1995, through December 27, 1999, for a total anticipated payment amount of $201,500. Sometime around October, 1995, the defendant stopped making regular alimony payments, and on December 31, 1997, he made his last payment, at which point his total payments amounted to $41,075.

On July 3, 1996, the plaintiff filed a motion for contempt and an accompanying order to show cause against the defendant based on his failure to pay weekly alimony and to make certain boat loan payments that were his responsibility to make under the terms of the separation agreement. At that point, the plaintiff alleged that the defendant was more than $21,000 in arrears on his alimony obligation. On July 8, 1996, the plaintiff filed identical motions, as well as a motion to enjoin the defendant from disposing of any assets. These motions were eventually marked "off" by the trial court. On July 23, 1997, the defendant filed a motion alleging that the plaintiff " 'is presently cohabit[ing]' " and there had been a substantial change in the circumstances of the parties. On April 20, 1998, the defendant filed an identical motion. The defendant failed to prosecute either of these motions; nor were they ever ruled upon by the trial court. On December 27, 1999, the defendant's alimony obligation terminated pursuant to the terms of the separation agreement. At that time, the defendant had paid the plaintiff only $41,075 of the $201,500 contemplated by the separation agreement.

On April 23, 2001, the plaintiff filed a motion for contempt against the defendant, alleging that he had failed to comply with the terms of the separation agreement. Specifically, the plaintiff alleged that the defendant was in contempt for failing to make the alimony payments required by the separation agreement,[2] and by failing to hold the plaintiff harmless for expenses related to the defendant's boat pursuant to article 4.2[3] of the separation agreement. Subsequently, in response to the plaintiff's motion for contempt, the defendant filed a motion to open the judgment of dissolution, a motion to terminate alimony postjudgment, and a motion for the return of alimony payments made postjudgment, all of which contended that the plaintiff was cohabiting at the time when the separation agreement was executed and the judgment of dissolution was rendered.

In its memorandum of decision, the trial court denied the defendant's motions, finding that, although

---

[2] The plaintiff specifically alleged that the defendant's last alimony payment had occurred on December 31, 1997, at which time he was more than $40,000 in arrears. Moreover, the plaintiff claimed that since the defendant's last payment, an additional 101 payments were due, for a total alimony arrearage of $118,275.

[3] Pursuant to article 4.2 of the separation agreement, "[t]he [defendant] shall own solely free and clear from any claim, right, title or interest by the [plaintiff] . . . the 1984 Jersey [b]oat, provided, however, that the [defendant] shall be responsible for any outstanding property taxes or loans on said boat and shall pay and hold the [plaintiff] harmless from any liabilities she may have occurred due to non-payment thereof . . . ."

In January, 1995, due to the defendant's failure to make the required loan payments on the boat, the mortgagee brought an action against the parties for the outstanding mortgage. The parties entered into a settlement agreement with the mortgagee detailing a payment schedule for the $73,000 with interest owed to the mortgagee, and a judgment lien was recorded against the plaintiff's house. Eventually, the payment schedule failed, and, in order to avoid the loss of her home, the plaintiff remortgaged her house, and paid the mortgagee the full $68,926 due. Despite the terms of article 4.2 of the separation agreement, the defendant failed to reimburse the plaintiff for the money she paid to the mortgagee.

"[a]nother man [had] moved [in] with the plaintiff . . . [he] did not contribute financial support until after the judgment [of dissolution] when [the] defendant stopped paying alimony on a regular basis," and, therefore, "[t]here [was] no evidence of a credible nature that the plaintiff's cohabitation around the time of the entry of judgment was assisting her financially." In addition, the trial court found that the language of the separation agreement was not self-executing, and that the defendant's motions sought "relief beyond the power of [the] court since alimony cannot be terminated or otherwise modified retroactively . . . ." (Citation omitted.) Consequently, the trial court found that the defendant had failed to meet his alimony obligation, and that the defendant was therefore indebted to the plaintiff for $160,425. In addition, the trial court awarded the plaintiff $68,926 for damages she had sustained in prior litigation over the boat,[4] and $23,560 in attorney's fees.[5] The plaintiff's request for interest on both awards was denied. The defendant appealed, and the plaintiff cross appealed, from the judgment of the trial court to the Appellate Court, and we transferred both appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On the appeal, the defendant claims that the trial court improperly: (1) refused to enforce the terms of the parties' separation agreement; (2) determined that alimony could not be retroactively terminated or modified in the present case; and (3) awarded the plaintiff attorney's fees. In response, the plaintiff contends that the trial court properly: (1) determined that alimony

[4] See footnote 3 of this opinion. The defendant has not challenged on appeal that portion of the judgment of the trial court awarding the plaintiff $68,926 for damages stemming from the prior litigation.

[5] Of the $23,560 in attorney's fees, $20,000 was allocated to the fees incurred by the plaintiff in the present action, and $3560 was allocated to the fees incurred by the plaintiff in the prior litigation concerning the boat. See footnote 3 of this opinion.

could not be terminated retroactively under the separation agreement; (2) enforced the terms of the separation agreement; and (3) concluded that the plaintiff was entitled to attorney's fees.

On the cross appeal, the plaintiff claims that the trial court abused its discretion by failing to award her interest on the sums found due for the defendant's outstanding alimony and boat obligations. The defendant contends that: (1) the record is inadequate for review; and (2) the trial court did not abuse its discretion. We affirm the judgment of the trial court.

I

We address the defendant's first two claims together because they are related. The defendant claims that the trial court improperly found that the terms of the parties' separation agreement were not self-executing, and could not be retroactively enforced in the present case. In response, the plaintiff claims, inter alia, that even if her right to receive weekly alimony payments could be retroactively terminated, the trial court found that she was not cohabiting, which precludes the relief sought by the defendant. We agree with the plaintiff.

As noted previously in this opinion, the defendant filed three motions in response to the plaintiff's motion for contempt, namely, a motion to open the judgment, a motion to terminate alimony postjudgment and a motion for the return of alimony payments made postjudgment. All three of the defendant's motions were predicated on an allegation that the plaintiff had been cohabiting with another man at the time of the execution of the separation agreement and the rendering of the judgment of dissolution.[6] There is no allegation in

---

[6] More specifically, the defendant's motion to open the judgment claimed that "the [p]laintiff was cohabit[ing] at the time of the execution of the [s]eparation [a]greement," and, therefore, requested that the trial court "[open] the judgment of dissolution on the basis of [the] fraud committed by the [p]laintiff . . . ."

The defendant's motion to terminate alimony postjudgment similarly claimed that "the [p]laintiff committed fraud on the [trial] [c]ourt and on

any of the defendant's motions that the plaintiff began cohabiting at some point *after* the judgment of dissolution was rendered. Therefore, the trial court's factual findings focused on the specific time period cited in the defendant's motions, namely, when the separation agreement was signed by the parties and incorporated into the judgment dissolving their marriage. In regard to that time period, the trial court found that, although "[a]nother man [had] moved [in] with the plaintiff . . . [he] did not contribute financial support until *after the judgment when [the] defendant stopped paying alimony on a regular basis.*" (Emphasis added.) Consequently, the trial court determined that "[t]here [was] no evidence of a credible nature that the plaintiff's cohabitation around the time of the entry of judgment [of dissolution] was assisting her financially." Accordingly, we agree with the plaintiff that, in regard to the time period cited in the defendant's motions, the trial court found that she was not cohabiting.

The defendant claims, however, that the trial court's findings focused on the wrong time period. More specifically, the defendant contends that the relevant question is whether the alleged cohabitant was contributing to the plaintiff's finances at the time the defendant ceased making alimony payments, and not at the time the parties entered into the separation agreement and judgment of dissolution. We are not persuaded.

To begin with, this claim is contrary to the plain language and intent of the three motions the defendant

the [d]efendant in failing to disclose to the [c]ourt that she was cohabit[ing] at the time of the dissolution." Therefore, that motion requested that the trial court terminate the defendant's obligation to pay alimony to the plaintiff.

Lastly, the defendant's motion for the return of alimony payments made postjudgment also alleged that the plaintiff had fraudulently concealed her cohabitation at the time of the entry of the judgment of dissolution, and requested "reimbursement of the alimony payments [he had made] in light of the fact that he was fraudulently induced into making [the] payments."

filed with the trial court, all of which focused specifically on the time when the parties entered into the separation agreement and the judgment of dissolution was rendered. During the trial in the present case, the defendant testified that he had stopped making his weekly alimony payments in 1995 because he had undergone heart surgery, which prevented him from working and placed him in a difficult financial situation. The defendant did not testify that he had stopped making his payments due to a belief that the plaintiff was cohabiting. Indeed, the defendant testified that he did not learn fully of the plaintiff's alleged cohabitation until a deposition was taken in 2001 in preparation for the present case.[7] Thus, the defendant's own testimony at trial conforms to the allegation made in all three of his motions—that the plaintiff was fraudulently concealing her cohabitation at the time the parties entered into the separation agreement. Accordingly, we conclude that the trial court's factual finding that the plaintiff was not cohabiting at the time of the dissolution of the marriage precludes the relief sought by the defendant.[8]

---

[7] We note that this testimony is in direct contrast to the motions filed by the defendant in July, 1997, and August, 1998, both of which sought modification of his alimony obligation based on an allegation that the plaintiff was "presently cohabit[ing]" and that there had been a substantial change in the circumstances of the parties.

[8] At the conclusion of his discussion of the relevant time frame, the defendant fleetingly claims that any finding that the plaintiff was not cohabiting after she received support from the cohabitant would have been clearly erroneous as it would be at odds with the underlying facts found. The defendant has provided no law or legal analysis in support of this claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Jellison* v. *O'Connell*, 73 Conn. App. 564, 565–66,

## II

We turn next to the issue of attorney's fees. Article 9.2 of the separation agreement provides: "In the event that it shall be determined by a court of competent jurisdiction that either party shall have breached any terms of the agreement herein contained, the offending party shall pay to the other party reasonable attorney's fees and court costs incurred in the enforcement of the provisions of this [a]greement . . . and made a part of any dissolution decree." Pursuant to article 9.2, the trial court awarded the plaintiff $3560 for the attorney's fees she incurred in defending herself in a prior action involving the boat owned by the defendant.[9] In addition, the trial court awarded the plaintiff $20,000 for the attorney's fees she incurred in prosecuting her motion for contempt and defending against the defendant's three motions in the present action.

The defendant first claims that the $20,000 awarded for the attorney's fees incurred in the present case should be reversed in accordance with his first two claims on appeal. In part I of this opinion, however, we rejected the defendant's first two claims on appeal. Accordingly, his challenge to the $20,000 award of attorney's fees is similarly rejected.

The defendant next claims that, if the $20,000 award for attorney's fees is reversed, then the $3560 awarded for the attorney's fees incurred in the prior boat litigation should be reversed as well, as the awards must be viewed together as "a carefully crafted mosaic . . . ." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). Because we have affirmed the $20,000

808 A.2d 752 (2002). Consequently, we decline to review the trial court's findings to determine whether they were clearly erroneous.

[9] See footnote 3 of this opinion.

award for attorney's fees, however, this claim also fails.[10]

## III

On the cross appeal, the plaintiff claims that the trial court improperly denied her request for interest on the damages awarded. The defendant contends that: (1) the record is not adequate for review; and, alternatively, (2) the trial court did not abuse its discretion in declining to award interest. We agree with the defendant.

The determination to award interest on moneys due and owing is within the discretion of the trial court. *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 254, 720 A.2d 879 (1998); *Marcus* v. *Marcus*, 175 Conn. 138, 146, 394 A.2d 727 (1978); see also General Statutes § 37-3a (interest up to 10 percent per year recoverable for "detention of money after it becomes payable"). In order to review the trial court's exercise of discretion, however, this court must have an adequate record. In its memorandum of decision in the present case, the trial court stated simply that "[t]he plaintiff has also requested interest but the request is denied." The plaintiff has not sought an articulation of that judgment, as provided by Practice Book § 66-5. The plaintiff's failure to do so "leaves this court without the ability to engage in a meaningful review." *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 204, 819 A.2d 227 (2003).

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] Article 9.2 of the separation agreement provided the trial court with the discretion to award "reasonable attorney's fees . . . ." We note that the defendant has not challenged the reasonableness of the awards for attorney's fees made by the trial court, but rather limited his challenge to the claim that the awards should be reversed in accordance with his first two claims on appeal. Consequently, we express no opinion as to the reasonableness of those awards.