NANCY BURTON *v.* DEPARTMENT
OF ENVIRONMENTAL
PROTECTION
ET AL.

NANCY BURTON *v.* COMMISSIONER
OF ENVIRONMENTAL
PROTECTION
ET AL.
(SC 20466)

Robinson, C. J., and McDonald, Mullins, Kahn and Keller, Js.

*Syllabus*

The plaintiff brought an action under the Connecticut Environmental Protec-
tion Act of 1971 (CEPA) (§ 22a-14 et seq.) against the Commissioner of
Environmental Protection and D Co., the owner and operator of a nuclear
power plant in Waterford, seeking, inter alia, an injunction requiring
the power plant to convert to a closed-cycle cooling system. The plaintiff
previously had intervened in a proceeding before the Department of
Environmental Protection to challenge the department's tentative deter-
mination to renew a permit authorizing D Co. to withdraw water from
Niantic Bay, cycle it through the power plant, and then discharge it into
the Long Island Sound. In her CEPA action, the plaintiff claimed, inter
alia, that the permit renewal proceeding was inadequate to protect the
rights recognized by CEPA and that the current operation of the power
plant would result in unreasonable pollution. The trial court rendered
judgment dismissing the plaintiff's CEPA action for lack of standing.
The plaintiff appealed, and this court reversed the trial court's judgment,

unless imposed prior to the date of the amendment"); Va. Code Ann. § 1-
239 (2017) ("if any penalty, forfeiture, or punishment be mitigated by any
provision of the new act of the General Assembly, such provision may, with
the consent of the party affected, be applied to any judgment pronounced
after the new act of the General Assembly takes effect"); W. Va. Code Ann.
§ 2-2-8 (LexisNexis 2018) ("if any penalty or punishment be mitigated by
the new law, such new law may, with the consent of the party affected
thereby, be applied to any judgment pronounced after it has taken effect").

concluding that the plaintiff did have standing. Thereafter, the permit renewal proceeding continued, and, in 2010, after the department conducted an evidentiary hearing, the hearing officer issued a proposed final decision, in which the hearing officer recommended that the department issue a permit. The department subsequently issued the permit, and the plaintiff filed an administrative appeal against the department and D Co., claiming, inter alia, that the department failed to make a legally valid best technology available determination. The administrative appeal was then consolidated with the plaintiff's CEPA action. Thereafter, the commissioner and D Co. filed motions to dismiss the CEPA action on the ground that it was moot, which the trial court granted. The plaintiff appealed from the judgment of dismissal, and this court reversed that judgment. On remand, the trial court conducted a hearing on the merits of the consolidated actions and rendered judgments in favor of the commissioner, the department and D Co. The plaintiff appealed, claiming, inter alia, that the trial court incorrectly concluded that she had failed to prove that the administrative proceeding was inadequate and that the operation of the power plant would result in unreasonable pollution. *Held*:

1. The plaintiff's claim that the administrative proceeding was inadequate to protect the rights recognized by CEPA was unavailing:

a. The plaintiff could not prevail on her claim that the administrative proceeding was inadequate insofar as the hearing officer precluded certain claims on which the plaintiff sought to intervene: the hearing officer did not abuse her discretion by precluding the plaintiff's claim challenging the permit renewal application on the ground that it failed to implement the best technology available, as that claim was duplicative of several other claims, and the hearing officer fully considered the plaintiff's arguments on this issue; moreover, the hearing officer did not abuse her discretion by precluding three additional claims of the plaintiff on the ground that they raised issues that were outside the department's jurisdiction, as these claims involved matters that were regulated exclusively by the federal government, and two of those claims, which raised issues concerning federal criminal law and employment practices, were not related to environmental issues.

b. The plaintiff's claim that the administrative proceeding was inadequate because the hearing officer had excluded a 2007 document containing a draft best technology available determination was unavailing: contrary to the plaintiff's claim, the department was previously directed by this court in *Fish Unlimited* v. *Northeast Utilities Service Co.* (254 Conn. 1) to review all of its prior determinations regarding the cooling system, and the plaintiff mischaracterized this court's language in *Fish Unlimited*, which was not an order but, rather, an explanation of what the department would be required to do to renew the permit pursuant to the applicable statutory scheme; moreover, the hearing officer's decision to exclude this document was not improper because there was nothing

Burton *v.* Dept. of Environmental Protection

in the document or testimony to support its credibility, unlike other drafts of the permit, which were formally circulated by the department, authenticated, signed by their drafters, and admitted at the hearing.

c. The plaintiff could not prevail on her claim challenging the neutrality of the administrative proceeding on the ground that the hearing officer was biased, colluded with D Co. to issue the permit without any consideration of the closed-cycle cooling system, and prejudged the plaintiff's challenge to the permit's best technology available determination; the plaintiff's claim was inadequately briefed, as her allegations regarding bias were speculative and lacked citations to the administrative record, and the plaintiff's arguments concerning the allegations contained no relevant legal authority and were cursorily scattered across different headings and sections of her brief.

2. This court declined to review the plaintiff's claim that she established that unreasonable pollution would result from the power plant's operation as permitted and claim that the permit's best technology available determination violated the Clean Water Act, as they were inadequately briefed: the plaintiff provided only minimal citation to the trial or administrative record in support of these claims, and she provided no citation to any legal authority to define "unreasonable pollution" under CEPA, to define "best technology available" under the Clean Water Act, or to support either claim; moreover, this court declined to address the plaintiff's claim that the trial court failed to follow this court's prior remand order when it conducted a single hearing because the claim was inadequately briefed, as the plaintiff's briefing of this claim was inconsistent and nearly incomprehensible.

Argued September 10, 2020—officially released January 21, 2021*

*Procedural History*

Action, in the second case, for a temporary injunction in connection with the intake and discharge of water from the Long Island Sound and nearby bodies of water by the defendant Dominion Nuclear Connecticut, Inc., the owner and operator of Millstone Nuclear Power Station, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Tanzer, J.*, granted the defendants' motions to dismiss and rendered judgment thereon in their favor, from which the plaintiff appealed; thereafter, this court reversed the trial court's judgment in the second case

* January 21, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Burton *v.* Dept. of Environmental Protection

and remanded that case for further proceedings; administrative appeal, in the first case, from the decision of the named defendant approving the application of the defendant Dominion Nuclear Connecticut, Inc., to renew its water discharge permit, brought to the Superior Court in the judicial district of Danbury, where the case was transferred to the judicial district of Hartford; subsequently, the cases were consolidated; thereafter, the court, *Sheridan, J.*, granted the defendants' motions to dismiss the action in the second case and rendered judgment thereon in their favor, from which the plaintiff appealed; subsequently, this court reversed the trial court's judgment in the second case and remanded that case for further proceedings; on remand, the cases were tried to the court, *Moukawsher, J.*; judgments for the defendants, from which the plaintiff appealed. *Affirmed.*

*Nancy Burton*, self-represented, the appellant (plaintiff).

*Matthew I. Levine*, assistant attorney general, with whom were *Daniel M. Salton*, assistant attorney general, and, on the brief, *William Tong*, attorney general, and *Claire E. Kindall*, solicitor general, for the appellees (named defendants in the first and second cases).

*Elizabeth C. Barton*, with whom were *Harold M. Blinderman* and, on the brief, *Taylor C. Amato*, for the appellee (defendant Dominion Nuclear Connecticut, Inc.).

*Opinion*

McDONALD, J. This case comes to us for the third time following lengthy and highly contested litigation. The plaintiff, Nancy Burton, brought an action under the Connecticut Environmental Protection Act of 1971 (CEPA), General Statutes § 22a-14 et seq., against the defendants, the Commissioner of Environmental Pro-

Burton *v.* Dept. of Environmental Protection

tection[1] and Dominion Nuclear Connecticut, Inc., and an administrative appeal under General Statutes § 4-183 (a) against the defendants, the Department of Environmental Protection[2] and Dominion. The actions, now consolidated, claim, in part, that the operation of the Millstone Nuclear Power Station (plant), which is owned and operated by Dominion, is causing unreasonable pollution of the waters of the state in violation of CEPA. Specifically, the plaintiff challenged the department's decision to issue a National Pollutant Discharge Elimination System permit to Dominion to authorize the intake and discharge of water by the plant, claiming that the permit renewal proceeding was inadequate to protect the rights recognized by CEPA. The trial court previously dismissed the plaintiff's CEPA action for lack of standing, which this court reversed in *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 970 A.2d 640 (2009) (*Burton I*). Thereafter, the trial court again dismissed the plaintiff's CEPA action, this time concluding that the action was moot because the permit renewal proceeding had terminated. This court reversed that decision in *Burton* v. *Commissioner of Environmental Protection*, 323 Conn. 668, 150 A.3d 666 (2016) (*Burton II*). On remand from *Burton II*, the trial court conducted a hearing on the merits of the plaintiff's CEPA claim and administrative appeal and rendered judgments in favor of the defendants. The plaintiff now appeals from those judgments, claiming, among other things, that the trial court incorrectly concluded that she failed to prove that the administrative

_____

[1] The Commissioner of Environmental Protection is now called the Commissioner of Energy and Environmental Protection. See footnote 2 of this opinion.

[2] In 2011, the Department of Energy and Environmental Protection was established as the successor department to the Department of Environmental Protection and the Department of Public Utility Control, and the Commissioner of Energy and Environmental Protection became the head of the successor department. See Public Acts 2011, No. 11-80, § 1, codified at General Statutes (Supp. 2012) § 22a-2d.

Burton *v.* Dept. of Environmental Protection

proceeding was inadequate and the operation of the plant would result in unreasonable pollution.

Our decisions in *Burton I* and *Burton II*, as supplemented by the record, set forth the following relevant facts and procedural history. The plant is a nuclear power facility located in Waterford. The plant has a once-through cooling system in which it draws water from Niantic Bay, cycles it once through the plant, then discharges the hot water into the Long Island Sound. The plaintiff alleges that this process draws approximately two billion gallons of water per day. These activities are authorized by a permit that the department issued to the owner of the plant—currently, Dominion—pursuant to the federal Clean Water Act, 33 U.S.C. § 1251 et seq.[3]

In 1992, the department issued a five year permit authorizing the plant's water intakes and discharges. After it expired, the plant continued to operate under that permit's terms while the department processed Dominion's timely permit renewal application pursuant to General Statutes § 4-182 (b). In 2006, the department issued a notice of tentative determination to renew the permit, which triggered the public aspect of the permit renewal proceeding. The plaintiff filed a timely notice of intervention in the permit renewal proceeding pursuant to General Statutes (Rev. to 2005) § 22a-19, as amended by No. 06-196, § 256, of the 2006 Public Acts.[4]

---

[3] The department originally issued the permit in 1992 to Dominion's predecessor, Northeast Nuclear Energy Company. When Dominion purchased the plant from Northeast in 2001, the department approved the transfer of Northeast's permit to Dominion and the substitution of Dominion for Northeast in the permit renewal application.

[4] General Statutes (Rev. to 2005) § 22a-19, as amended by No. 06-196, § 256, of the 2006 Public Acts (P.A. 06-196), provides in relevant part: "(a) In any administrative, licensing or other proceeding . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding . . . involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. . . ."

Hereinafter, all references to § 22a-19 in this opinion are to the 2005 revision of the statute, as amended by P.A. 06-196, § 256.

Burton *v.* Dept. of Environmental Protection

She claimed, among other things, that the plant's operation, as permitted, would result in unreasonable pollution because it would "entrain and impinge [marine life], a natural resource of vital import[ance] to the state"; (internal quotation marks omitted) *Burton* v. *Commissioner of Environmental Protection*, supra, 291 Conn. 794; and "continuously release vast quantities of hot water [in]to the Long Island Sound . . . ." (Internal quotation marks omitted.) Id., 794–95. She claimed that these activities would "continue the process by which indigenous fish stocks have been devastated"; (internal quotation marks omitted) id., 794; and that converting the plant's current cooling system to a closed-cycle cooling system "would virtually eliminate waterborne adverse impacts to the marine environment . . . ." (Internal quotation marks omitted.) Id., 795. The hearing officer allowed the plaintiff to intervene on certain claims but precluded numerous other claims that the plaintiff raised concerning Dominion's and the department's alleged collusion and illegal activities, as well as the plant's alleged radioactive pollution. At every stage of the proceedings, the plaintiff has argued that the plant should convert to a closed-cycle cooling system. This cooling system would recirculate the water used to cool the plant and result in significantly less water intake and discharge. See, e.g., *Entergy Corp.* v. *Riverkeeper, Inc.*, 556 U.S. 208, 214 n.2, 129 S. Ct. 1498, 173 L. Ed. 2d 369 (2009).

In 2007, while the permit renewal proceeding was ongoing, the plaintiff brought the first action against the commissioner under CEPA, General Statutes § 22a-16.[5] She claimed, among other things, that (1) the permit

___

[5] General Statutes § 22a-16 provides in relevant part: "[A]ny person . . . may maintain an action in the superior court . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

Burton *v.* Dept. of Environmental Protection

renewal proceeding was inadequate to protect the rights recognized by CEPA, and (2) the current operation of the plant would result in unreasonable pollution. She sought, among other remedies, an injunction requiring the plant to convert to a closed-cycle cooling system. The trial court dismissed this action, holding that the plaintiff lacked standing under § 22a-16 because her claim arose from a permitting proceeding. The plaintiff appealed, and this court reversed. We concluded that the plaintiff had standing for her claim under § 22a-16 because her complaint "sets forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from [the plant's] operation." *Burton* v. *Commissioner of Environmental Protection*, supra, 291 Conn. 804. We also reasoned that the ongoing permit renewal proceeding did not preclude the plaintiff's action when, as here, the plaintiff claimed "that the permit renewal proceeding is inadequate to protect the rights recognized by [CEPA] . . . ." Id., 812. We remanded the case, directing the trial court to afford the plaintiff an opportunity to establish that the permit renewal proceeding was inadequate to protect the rights recognized by CEPA and, if appropriate, to stay that administrative proceeding. Id., 813.

Meanwhile, the permit renewal proceeding continued. In 2008, the department introduced a revised draft permit, which was the product of negotiations between Dominion and various environmental organizations that had also intervened in the administrative proceeding. The department conducted an evidentiary hearing on the permit renewal over the course of eighteen days in January and February, 2009. During the hearing, the plaintiff offered the testimony of two fact witnesses, including herself. She also extensively cross-examined all of Dominion's and the department's witnesses. Additionally, the plaintiff offered approximately sixty-one

Burton *v.* Dept. of Environmental Protection

exhibits, one of which was initially admitted as a full exhibit but was subsequently excluded.

In 2010, the hearing officer issued her proposed final decision[6] pursuant to General Statutes (Rev. to 2009) § 4-179 (c), in which she recommended that the department issue the revised draft permit. The plaintiff filed exceptions to the proposed final decision. The department's deputy commissioner, who was charged with rendering a final decision on the contested permit renewal, rejected the plaintiff's arguments. Thereafter, the deputy commissioner issued the permit.[7]

The 2010 permit is the center of this dispute. The Clean Water Act required the department to determine, in its best professional judgment, that the plant's cooling system, as permitted, reflects "the best technology available [BTA] for minimizing adverse environmental impact." 33 U.S.C. § 1326 (b) (2018); see *Natural Resources Defense Council, Inc.* v. *United States Environmental Protection Agency*, 822 F.2d 104, 111 (D.C. Cir. 1987) ("[i]f no national standards have been promulgated . . . the permit writer is authorized to use, on a case-by-case basis, [the permit writer's] 'best professional judgment' to impose" applicable effluent limitations that comply with Clean Water Act). The 2010 permit evaluated the operation of the plant's cooling

---

[6] Under General Statutes (Rev. to 2009) § 4-179 (b), a hearing officer makes a proposed final decision in a contested case, which "shall be in writing and contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision." Following the hearing officer's proposed final decision, the department's deputy commissioner issued her final decision under General Statutes (Rev. to 2009) § 4-180, which affirmed the hearing officer's proposed final decision, with minor modifications, and conducted an independent evaluation as to whether the permit complied with, among other statutes and regulations, CEPA and the Clean Water Act.

[7] This five year permit expired in 2015. Dominion filed a timely application for renewal, and the plant continues to operate under this permit pursuant to § 4-182 (b).

Burton *v.* Dept. of Environmental Protection

system and concluded that it did not reflect the BTA. The permit recognized that requiring the plant to convert to a closed-cycle cooling system, as sought by the plaintiff, would reflect the BTA, but the permit declined to require the plant to convert to that cooling system because the department could not evaluate the feasibility of such a requirement. Instead, the permit imposed a series of other technological requirements to mitigate the current cooling system's environmental impact. The permit also required specific studies to ascertain the feasibility of converting the plant to a closed-cycle cooling system, the results of which may trigger a "subsequent BTA determination by the commissioner . . . ."

In evaluating the permit's compliance with CEPA and the Clean Water Act, the hearing officer and the deputy commissioner each concluded that the plant's current cooling system and the additional studies and technology requirements *together* reflected the BTA. The deputy commissioner noted that "the BTA in the present case is not a single technology but, rather, a combination of various technologies, studies, and commitments."

Following the department's issuance of the 2010 permit, the plaintiff timely filed the second action, an administrative appeal from the department's permit renewal under § 4-183 (a).[8] The plaintiff claimed, among other things, that the final decision and permit failed to make a legally valid BTA determination. This action was consolidated with the plaintiff's earlier CEPA action.

Thereafter, the defendants moved to dismiss the CEPA action, arguing that it was moot because the

_____

[8] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

Burton *v.* Dept. of Environmental Protection

permit renewal proceeding had terminated. The trial
court granted the defendants' motions to dismiss, rea-
soning that, with the conclusion of the administrative
proceeding, the court lacked authority to grant equita-
ble relief consistent with this court's remand in *Burton
I*. The plaintiff appealed, and this court reversed, con-
cluding that "the present action is not moot because a
controversy continues to exist between the parties";
*Burton* v. *Commissioner of Environmental Protection*,
supra, 323 Conn. 677; and "[t]he issuance of the renewal
permit did not resolve or terminate these controversies,
and they continue to exist." Id., 678. We also recognized
that, if the plaintiff prevailed, the trial court's authority
to issue an appropriate remedy would not be limited
to staying the administrative proceeding; rather, the
court would have the authority to adjudicate the impact
of the plant's operation and issue appropriate equitable
relief. See id. Accordingly, we remanded the case; id.,
684; directing the trial court to determine "whether the
permit renewal proceeding was inadequate because the
department misinterpreted or misapplied the applicable
environmental law and, if the hearing is determined to
have been inadequate, [to] . . . order . . . appro-
priate declaratory or equitable relief." Id., 679 n.7. We
further emphasized that "we express[ed] no opinion
. . . regarding" the appropriate procedures for litigat-
ing the CEPA action and administrative appeal, as con-
solidated. Id.

In 2018, following our remand in *Burton II*, the trial
court held a single, four day hearing on the merits of
the two consolidated actions. The trial court rendered
judgments for the defendants in both actions. It con-
cluded that the plaintiff did not establish that the plant's
operation, as permitted, resulted in unreasonable pollu-
tion. It also concluded that the plaintiff failed to estab-
lish that the administrative proceeding contained
procedural irregularities or was otherwise inadequate

Burton *v.* Dept. of Environmental Protection

to protect the rights recognized by CEPA. The trial court also disagreed with the plaintiff's challenge to the permit's BTA determination, reasoning that the deputy commissioner, in her final decision, "conclude[d] that the technology proposed for [the plant] meets the Clean Water Act requirement of [BTA]."

The plaintiff filed a motion for mistrial, claiming, among other things, that the remand in *Burton II* required the trial court to hold a hearing first on the adequacy of the administrative proceeding and then a distinct hearing on the issue of unreasonable pollution. The trial court denied the plaintiff's motion. The plaintiff appealed from the judgments of the trial court to the Appellate Court, and the appeal was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional relevant facts will be set forth as necessary.

Although the plaintiff's brief appears to assert six arguments, they are not clearly articulated, and they are more properly distilled into four claims. First, the plaintiff argues that the trial court incorrectly concluded that she failed to establish that the administrative proceeding was inadequate to protect the rights recognized by CEPA. Second, the plaintiff argues that the trial court improperly held that she failed to establish that unreasonable pollution would result from the plant's operation. Third, the plaintiff argues that the trial court incorrectly concluded that the department's BTA determination did not violate the Clean Water Act. Finally, the plaintiff argues that the trial court violated this court's remand order in *Burton II* by failing to follow the prescribed two step proceeding. The defendants argue that the plaintiff has inadequately briefed all of her claims. They also argue, in the alternative, that the trial court's procedures and substantive holdings were proper. We agree with the defendants that the majority of the plaintiff's claims are inadequately briefed, and

Burton *v.* Dept. of Environmental Protection

we conclude that those claims that are adequately briefed lack merit.[9]

I

We begin with the plaintiff's claim that the administrative proceeding was inadequate to protect the rights recognized by CEPA.[10] Although not clearly explained in her brief, the plaintiff appears to raise three arguments in support of her claim: the plaintiff challenges (1) the hearing officer's decision to preclude certain claims on which the plaintiff sought to intervene, (2) the hearing officer's decision to exclude certain evidence that the plaintiff sought to admit, and (3) the neutrality of the proceeding. We address each argument in turn.

A

The plaintiff first argues that the administrative proceeding was inadequate because the hearing officer precluded certain claims on which she sought to intervene. Specifically, the plaintiff asserts that paragraphs 5B, 5F, 5J and 5K of her notice of intervention were

[9] We note that the plaintiff raises numerous arguments throughout her brief via superficial and conclusory statements that do not appear to fit into any of her four main claims. To the extent they assert claims for relief, we conclude that they are inadequately briefed. These arguments include: the legality of the department's emergency authorizations regarding the plant's 1992 permit; the question of whether the department applied cost-benefit analysis in renewing the permit; the propriety of the other intervenors' negotiations and stipulation; the propriety of the trial court's reviewing evidence that was excluded from the administrative proceeding; and the veracity of the trial court's statements about the context of the Clean Water Act.

[10] We note that the plaintiff mischaracterizes the trial court's decision on this issue. She asserts that "[t]he trial court never ruled on the specific question of whether [the administrative] proceedings were inadequate pursuant to [General Statutes] § 22a-20 . . . ." This is not true. Under a heading dedicated to the inadequacy of the proceeding, the trial court concluded that the administrative proceeding "suffered from no fundamental procedural unfairness."

Burton *v.* Dept. of Environmental Protection

improperly precluded. Because the plaintiff does not reference the hearing officer's preclusion of any of her other claims, we confine our analysis to those claims enumerated in the plaintiff's brief.

Paragraph 5B alleged that granting the permit renewal application would result in the release of toxic and radioactive substances into the Long Island Sound. Paragraph 5F alleged that "[t]he application violates the federal Clean Water Act in that it fails to implement the [BTA] to avoid unnecessary adverse impacts and in other respects." Paragraph 5J baldly alleged that Dominion had pleaded "guilty to committing federal felonies" due to falsifying environmental monitoring reports, releasing carcinogens, and violating permit conditions. Paragraph 5K alleged, also with little context, that Dominion had a "track record of firing whistleblowers in retaliation for their truth telling and exposure" of information about the plant's operation. The hearing officer precluded these four claims, among others, because they contained "allegations that are either not relevant to this proceeding, redundant, or have been previously resolved," and because they raised issues that were "beyond the scope of the application before [the hearing officer] or are otherwise not within the jurisdiction of [the department]." For its part, the trial court noted that the "hearing officer heard, in one fashion or another, all of the substantive issues [the plaintiff] complains about, including the issue of the closed-cycle [cooling] system." The plaintiff argues that preclusion of these claims contributed to the inadequacy of the administrative proceeding because she was unable to raise issues relevant to the contested permit renewal decision. The defendants argue that the hearing officer correctly concluded that the department lacked jurisdiction over the precluded claims.

We begin with the applicable legal principles governing a party's intervention in an administrative proceed-

Burton *v.* Dept. of Environmental Protection

ing. Section 22a-19 (a) provides in relevant part: "In any administrative . . . proceeding . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding . . . involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." In addition, the department's rules of practice provide that the hearing officer in a contested case has discretion to "restrict the participation in the proceeding of [an intervenor], although only to the extent necessary to promote justice and the orderly conduct of the proceeding." Regs., Conn. State Agencies § 22a-3a-6 (k) (7). We therefore consider whether the hearing officer abused her discretion by precluding the plaintiff's claims. See, e.g., *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 446, 984 A.2d 748 (2010) ("[o]ur ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted . . . in abuse of its discretion" (internal quotation marks omitted)).

We conclude that the hearing officer did not abuse her discretion by precluding these four claims. First, paragraph 5F, which challenged the permit renewal application because it failed to implement the BTA, was duplicative of several of the claims on which the hearing officer permitted the plaintiff to intervene. In particular, the hearing officer considered the plaintiff's challenge regarding the proper implementation of the BTA under paragraph 6, which asserted the diminished environmental impact of a closed-cycle cooling system. The hearing officer then issued a detailed ruling that the plaintiff had failed to establish a prima facie showing of unreasonable pollution. Because paragraph 5F was duplicative of several other claims and the hearing officer fully considered the plaintiff's arguments on this

Burton *v.* Dept. of Environmental Protection

point, the hearing officer did not abuse her discretion by precluding it.

In addition, we conclude that it was not an abuse of discretion for the hearing officer to preclude paragraphs 5B, 5J and 5K on the ground that they raised issues that were outside the department's jurisdiction. We have repeatedly explained that "[CEPA] grants standing to intervenors to raise only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding [in] which the party seeks to intervene." *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 148, 788 A.2d 1158 (2002). In 2006, when the plaintiff filed her notice of intervention, the department had jurisdiction over "all matters relating to the preservation and protection of the air, water and other natural resources of the state." General Statutes (Rev. to 2005) § 22a-2 (a).[11] Because radiological discharge by nuclear power plants is regulated exclusively by the federal government, the hearing officer's decision to preclude paragraph 5B for lack of jurisdiction was not an abuse of discretion. See *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 552, 23 A.3d 1176 (2011) (holding, in distinct action brought by plaintiff against Dominion, that federal law preempted regulation of radiological safety at nuclear power plants); see also *Pacific Gas & Electric Co.* v. *State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 212, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) ("the [f]ederal [g]overnment maintains complete control of the safety and 'nuclear' aspects of energy generation"). Regarding paragraphs 5J and 5K, federal criminal law and employment practices are likewise outside the department's jurisdiction.

Moreover, under CEPA, intervention in administrative proceedings is limited to claims asserting certain

_____

[11] The department's jurisdiction was modified in 2011 by No. 11-80, §§ 1 and 55, of the 2011 Public Acts. See footnote 2 of this opinion.

337 Conn. 781 AUGUST, 2021 797

Burton *v.* Dept. of Environmental Protection

*environmental* issues. See *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 159, 953 A.2d 1 (2008) ("it is axiomatic that [§ 22a-19] encompasses substantive environmental issues only"). The plaintiff does not connect her allegations in paragraphs 5J and 5K to any such environmental issue. Accordingly, it was not an abuse of discretion for the hearing officer to preclude these claims.

B

The plaintiff next argues that the administrative proceeding was inadequate because the hearing officer excluded certain evidence that the plaintiff sought to introduce. Specifically, the plaintiff identifies a document that she alleges is a draft BTA determination prepared by department staff, dated September 10, 2007.[12] This document asserts that the closed-cycle cooling system satisfies the BTA requirement in the Clean Water Act.

The following additional facts are relevant to our analysis. At the administrative hearing, the plaintiff sought to introduce the September 10, 2007 document during her cross-examination of a Dominion witness, but the hearing officer declined to enter it as a full

_____

[12] The plaintiff also asserts that "the hearing officer precluded the plaintiff from introducing into evidence the most recently expired 1992 permit . . . ." (Footnote omitted.) To the extent that the plaintiff argues that this exclusion contributed to the inadequacy of the proceeding, this argument is inadequately briefed because the plaintiff provides no analysis regarding why exclusion of this evidence was improper. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004).

Likewise, at oral argument, the plaintiff referenced testimony from litigation in another case by an expert, Mark Gibson, which was not admitted as evidence in the present case. Because this report was not raised prior to oral argument, we decline to consider this newly raised argument. "[I]t is well settled that a claim cannot be raised for the first time at oral argument." *Hornung* v. *Hornung*, 323 Conn. 144, 160 n.20, 146 A.3d 912 (2016).

Burton *v.* Dept. of Environmental Protection

exhibit. The hearing officer noted that it was not authenticated, and, therefore, it was not credible. She observed that it was not typed on department letterhead; nor was it signed to otherwise indicate its source. The plaintiff asserted that the unidentified person who gave her the document told her that it was prepared by department staff. The hearing officer noted that, without testimony by the person who gave the plaintiff the document, her assertion was hearsay. Finally, the hearing officer concluded that there was no foundation to introduce the document as an exhibit because there was nothing to link the document to the witness the plaintiff was cross-examining.[13]

On appeal, the plaintiff appears to argue that the exclusion of this document rendered the administrative proceeding inadequate for two reasons. First, the plaintiff challenges the hearing officer's evidentiary ruling that the document lacked credibility. Second, the plaintiff argues that the exclusion of this document rendered the administrative proceeding inadequate because the department was previously ordered by this court to "review all of [the department's] prior determinations that [the plant's] cooling system is consistent with the provisions of the . . . Clean Water Act, which requires that the cooling water intake structure represent [the BTA] for minimizing environmental impacts." (Internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 1, 14, 756 A.2d 262 (2000), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002). In *Fish Unlimited*, which was decided before the permit renewal proceeding began, several environmental organizations sought an injunction against the prior owners and operators of the plant requiring it to convert to a closed-cycle cooling system. See id., 3 and nn.1 and 2;

---

[13] The trial court did not specifically address the issue of whether exclusion of this document was proper.

Burton *v.* Dept. of Environmental Protection

see also id., 9. In upholding the trial court's dismissal of the complaint, this court reasoned that the environmental organizations were first required to exhaust the administrative remedies available through the permit renewal proceeding. Id., 19–21. Although the holding in *Fish Unlimited* regarding the applicability of the exhaustion doctrine has since been overturned; see *Waterbury* v. *Washington*, supra, 545; the plaintiff argues that this court ordered the department to review prior BTA determinations in the permit renewal proceeding, which it failed to do by excluding the September 10, 2007 draft BTA determination.

The defendants contend that exclusion of this document was not an abuse of discretion in light of the hearing officer's role to evaluate the reliability of evidence. Dominion also argues that the plaintiff has not shown how the hearing officer's evidentiary ruling affected the outcome of the permit renewal proceeding in light of the expansive administrative record. For their part, the department and the commissioner argue that the passages the plaintiff cites from *Fish Unlimited* "were not intended to instruct the department on the substantive requirements of a hearing."

Resolution of this claim is controlled by well settled principles. Under the department's rule governing contested cases, a hearing officer in a contested case has the discretionary power to "[a]dmit or exclude evidence and rule on objections to evidence . . . ." Regs., Conn. State Agencies § 22a-3a-6 (d) (2) (E). In addition, "[t]he hearing officer *shall not admit any evidence which is* irrelevant, immaterial, unduly repetitious, *untrustworthy, or unreliable.*"[14] (Emphasis added.) Id., § 22a-3a-6 (s) (1). Moreover, "administrative tribunals are not

_____

[14] This subdivision of the regulation supplements General Statutes § 4-178, under which "the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence . . . ."

Burton *v.* Dept. of Environmental Protection

strictly bound by the rules of evidence and . . . they may consider evidence which would normally be incompetent in a judicial proceeding, as long as the evidence is reliable and probative.'' *Tomlin* v. *Personnel Appeal Board*, 177 Conn. 344, 348, 416 A.2d 1205 (1979); see also, e.g., *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 249, 470 A.2d 1214 (1984) (''Although proceedings before administrative agencies . . . are informal and are conducted without regard to the strict rules of evidence, the hearings must be conducted so as not to violate the fundamental rules of natural justice. . . . Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence.'' (Citation omitted.)). ''It is within the province of the hearing officer to determine the credibility of evidence. . . . The plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion.'' (Citation omitted; internal quotation marks omitted.) *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 397, 786 A.2d 1279 (2001).

We disagree with both of the plaintiff's arguments regarding the September 10, 2007 document. First, the plaintiff mischaracterizes this court's language from *Fish Unlimited*. Our statement that ''the department must review all of its prior determinations [regarding the cooling system]''; *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 14; was not an order; rather, it was an explanation of what the department would be required to do to renew the permit pursuant to the applicable statutory scheme. We described this process to explain that, contrary to the arguments raised by the plaintiff environmental organizations, the

Burton *v.* Dept. of Environmental Protection

permit renewal proceeding would not be futile, and the department would have the authority to grant the requested relief. See id., 14–15. Contrary to the plaintiff's argument, excluding this document did not "def[y]" any "order" from this court.

Second, the hearing officer's decision to exclude this document was not improper because there was nothing in the document or testimony to support its credibility. This contrasts with the other drafts of the permit, which were formally circulated by the department, authenticated, signed by their drafters, and admitted at the hearing. The department's regulations require a hearing officer to exclude evidence that is "untrustworthy, or unreliable"; Regs., Conn. State Agencies § 22a-3a-6 (s) (1); and the plaintiff has not explained how the hearing officer's evidentiary ruling regarding the document's credibility was improper, particularly in light of the document's low probative value.

C

Finally, with respect to the adequacy of the proceeding, the plaintiff challenges the neutrality of the administrative proceeding. Specifically, she argues that the hearing officer was biased, colluded with Dominion to issue the permit without any consideration of the closed-cycle cooling system, and prejudged the plaintiff's challenge to the permit's BTA determination. The defendants argue that the plaintiff's claim is inadequately briefed because it is conclusory, speculative, and without citations to the administrative record. They also argue, in the alternative, that the hearing officer's conduct was proper and that, even if there were any procedural irregularities, the plaintiff failed to show how she was harmed by them.

We agree with the defendants that this claim is inadequately briefed. The plaintiff's allegations of the hearing officer's bias are speculative and contain no citations

Burton *v.* Dept. of Environmental Protection

to the record.[15] See, e.g., *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, [are inadequately briefed]"). Additionally, the plaintiff's argument contains no legal authority discussing the circumstances under which an agency's action may be invalidated for bias, collusion, or prejudgment. Finally, the plaintiff's argument on this claim is cursorily scattered across different headings and sections of her brief, making it short and difficult to comprehend. As such, we conclude that it is inadequately briefed.

II

The plaintiff raises three additional claims on appeal. First, she claims that she established that unreasonable pollution would result from the plant's operation as

---

[15] The only specific evidence that the plaintiff supplies to support her allegations of collusion between the department and Dominion is testimony by a Dominion witness regarding the stipulation negotiations between the department, Dominion, and the other environmental intervenors. In the administrative proceeding, the witness testified that a "ground rule" of the stipulation negotiations was that the parties would not discuss the issue of converting the plant to a closed-cycle cooling system. In objecting to the plaintiff's subsequent line of questioning, Dominion's attorney restated the witness' testimony as indicating that "it was clear that all parties were in agreement that [the closed-cycle cooling system] was not on the table." In this appeal, the plaintiff asserts that the witness' testimony that the closed-cycle cooling system was "off the table" supports her allegations of bias, collusion, and prejudgment by the hearing officer. With no analysis or other evidence to support them, these allegations are speculative and the claims on which they are based are inadequately briefed. See, e.g., *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("[when] the parties cite no law and provide no analysis of their claims, we do not review such claims" (internal quotation marks omitted)). Moreover, the witness' testimony referenced the stipulation negotiations, not the hearing. The hearing officer and the deputy commissioner were required to evaluate the stipulated revised draft permit to ensure that it complied with applicable state and federal law, which they did in their proposed final decision and final decision, respectively. The plaintiff presents no evidence that these decisions were prejudged as a result of the stipulation negotiations.

Burton *v.* Dept. of Environmental Protection

permitted. Second, she claims that the permit's BTA determination violates the Clean Water Act. Specifically, the plaintiff argues that the permit functionally makes no valid BTA determination at all because it determines that the current cooling system does *not* meet the BTA requirement, yet it declines to require the plant to convert to the superior cooling system. Third, the plaintiff claims that the trial court failed to follow this court's remand order in *Burton II* when it conducted a single hearing on the merits of her actions. The defendants contend that each of these claims is inadequately briefed. We agree with the defendants.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003). For a reviewing court to "judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). In addition, briefing is inadequate when it is "not only short, but confusing, repetitive, and disorganized." Id., 726.

We are mindful that "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] liti-

Burton *v.* Dept. of Environmental Protection

gants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law.'' (Citation omitted; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005). Moreover, ''[a]n appellant cannot . . . rely on the appellee to decipher the issues and explain them to the [reviewing court].'' *State* v. *Buhl*, supra, 321 Conn. 728–29; see, e.g., *Traylor* v. *State*, 332 Conn. 789, 806–807, 213 A.3d 467 (2019) (''[w]e acknowledge that the plaintiff is a self-represented party and that it is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants . . . [but] a litigant on appeal [is not] relieved of the obligation to sufficiently articulate a claim so that it is recognizable to a reviewing court'' (citations omitted; internal quotation marks omitted)).

We conclude that the plaintiff's claims that she established that unreasonable pollution would result from the plant's operation and that the permit's BTA determination violates the Clean Water Act are inadequately briefed. The plaintiff provides only minimal citation to the trial court record or administrative record in support of those claims.[16] She provides no citation to any

_____

[16] For the first time, in her reply brief, the plaintiff quotes, without any analysis, a memorandum prepared by an individual who did not testify in the trial court and whose credibility as an expert witness could not be judged. The short memorandum, circulated internally within the department, summarizes a report evaluating the impact of the plant's operation on fish population and entrainment during the year 1996. It is well settled that ''new arguments are not to be raised in a reply brief because [the opposing party is] preclude[d] . . . from responding.'' *State* v. *Williams*, 146 Conn. App. 114, 137 n.25, 75 A.3d 668 (2013), aff'd, 317 Conn. 691, 119 A.3d 1194 (2015); see, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 91 n.9, 881 A.2d 139 (2005) (''[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief'' (internal quotation marks omitted)). The plaintiff's reply brief cursorily states that this memorandum is ''particularly damning'' but does not analyze its relevance to her proposition that a closed-cycle cooling system would reduce the plant's environmental impact. Accordingly, we decline to consider the memorandum or any related argument that the plaintiff raises.

Burton *v.* Dept. of Environmental Protection

legal authority to define "unreasonable pollution" under
CEPA, define "best technology available" under the
Clean Water Act, or support either claim. She also pro-
vides no meaningful analysis for either claim. See, e.g.,
*MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 748, 183
A.3d 611 (2018) ("[a]nalysis, rather than mere abstract
assertion, is required in order to avoid abandoning an
issue by failure to brief the issue properly" (internal
quotation marks omitted)). Accordingly, we decline to
review these claims.

In addition, we conclude that the plaintiff's claim that
the trial court failed to follow this court's remand order
in *Burton II* when it conducted a single hearing is inade-
quately briefed. As an initial matter, the plaintiff's brief-
ing is inconsistent: she asserts that the trial court should
have conducted a two step proceeding, but she differs
in what she argues the two steps should be. At one
point in her brief, the plaintiff argues that the two steps
should have been (1) a hearing on the merits of her
claims, and then (2) a hearing on the appropriate relief.
Later in her brief, the plaintiff argues that the two steps
should have been (1) a hearing on the merits on the
inadequacy of the administrative proceeding issue, and
then (2) a hearing on the merits on the unreasonable
pollution issue. Given this inconsistency, the plaintiff's
argument on this claim is nearly incomprehensible. See,
e.g., *State* v. *Buhl*, supra, 321 Conn. 726 (declining to
review claim that was "not only short, but confusing,
repetitive, and disorganized"); see also, e.g., *Birch* v.
*Polaris Industries, Inc.*, 812 F.3d 1238, 1249 (10th Cir.
2015) (declining to review claim that was "vague, con-
fusing, [and] conclusory"). Additionally, the plaintiff
devotes less than one page of her main brief to this
argument. "Although the number of pages devoted to
an argument in a brief is not necessarily determinative,
relative sparsity weighs in favor of concluding that the
argument has been inadequately briefed." *State* v. *Buhl*,

supra, 726. Accordingly, we consider this claim to be inadequately briefed and decline to address it.[17]

The judgments are affirmed.

In this opinion the other justices concurred.

———————————————